Todd Shea
Shea Law Firm, P.L.L.C.
225 E. Mendenhall, Suite E
Bozeman, MT 59715
Telephone: (406) 587-3950
Facsimile: (406) 587-9752
toddshea@shealawoffice.net

Attorney for Plaintiff

## U.S. DISTRICT COURT

## DISTRICT OF MONTANA

## HELENA DIVISION

| | |
|---|---|
| MICHELLE CAMPBELL, | CASE NUMBER: _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CTA, INC., d/b/a CTA ARHITECTS, ENGINEERS & PLANNERS, and JOHN DOES 1-10, | |
| Defendants. | |

COMES NOW, Michelle Campbell, by and through her attorney of record, and files this Complaint against Defendants as follows:

## <u>PARTIES</u>

1.    Plaintiff Michelle Campbell is a resident of Helena, Montana.

2.    Upon information and belief, CTA, Inc. d/b/a CTA Architects, Engineers, & Planners (hereinafter "CTA"), is a corporation registered to do business in the state of Montana with its principal

place of business in Billings, Montana.

3.     The John Does listed in the Complaint are currently unidentified persons or entities potentially liable to the Plaintiff.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter pursuant to 29 U.S.C.A. §1132 (e)(1).

5.     Venue is appropriate in this Court pursuant to U.S.C.A. §1132 (e)(2).

## BACKGROUND

6.     One of CTA's "core values" is, "Doing Business by the Golden Rule."

7.     Ms. Campbell began working for CTA as a full time Administrative Assistant on March 19, 2009.

8.     A substantial part of Ms. Campbell's compensation with CTA entailed full benefits including, but not limited to, health, dental, vision, life insurance for herself and her children, a 401(k) plan, short term and long term disability, and an education reimbursement benefit.

9.     The above benefits were extremely important to Ms. Campbell as she was a single mother of 3 children.

10.    In January of 2013, Ms. Campbell advised her Office Manager and a CTA principal (Rick DeMarinis) that she had just been told that she had Multiple Sclerosis ("MS").

11.    Mr. DeMarinis suggested that Ms. Campbell seek a second opinion concerning her MS condition.

12.    Ms. Campbell then traveled to Seattle to consult an MS specialist, and her MS diagnosis was confirmed.

13.    On February 13, 2013, Ms. Campbell advised CTA's human resources representative via email that she had MS and that she was pregnant.

14.    In Ms. Campbell's February 13th email to CTA, Ms. Campbell noted that "with medication the [MS] symptoms/side effects will still happen, but less often and supposedly go away more quickly than if I wasn't on medication."  Ms. Campbell's email also noted that she had 13 lesions in her brain "already." Further, Ms. Campbell's email noted that she had recently "lost control of my right hand for about two/three weeks[]" and that her "short-term memory has been affected somewhat as well, but I am trying my hardest to do my best." Ms. Campbell concluded her February 13th email by noting, "just thought it was appropriate at this point in time to let

you know, as I don't know the policies, procedures for this type of situation."

15.    Neither CTA's Human Resources representative, nor anyone else on behalf of CTA, responded to Ms. Campbell's email.

16.    On March 27, 2013, Ms. Campbell's supervisor, Zoe Smith, called Ms. Campbell in for a conference call with CTA's Human Resources representative, Tammy Jones. Without any prior notification, they advised Ms. Campbell that her hours were being reduced from 40 hours per week to 16 hours per week and as a result all of her CTA benefits would be terminated as of March 31, 2013.

17.    In order to have insurance benefits with CTA, one must work at least 30 hours per week and in order to have 401(k) benefits one must work at least 20 hours per week.

18.    A prominent part of the March 27th meeting entailed CTA's telling Ms. Campbell about her total loss of insurance benefits as a result of her reduction in hours.

19.    During the March 27th meeting, Ms. Campbell asked CTA if the loss of all of her benefits would be permanent or if she might

get her hours back. CTA advised Ms. Campbell that her loss of hours and benefits were permanent.

20.   CTA explained in writing on March 28, 2013 that the reduction of Ms. Campbell's work hours to 16 hours per week was "due to low projected work load in the coming months...."

21.   CTA was aware of additional job skills that Ms. Campbell possesses, including accounting skills. CTA made no attempt to utilize Ms. Campbell's additional skills prior to drastically reducing Ms. Campbell's hours and eliminating all of her benefits. Further, Ms. Campbell did work for other CTA offices while working in the Helena office.

22.   Ms. Campbell had always been a conscientious and satisfactory employee at CTA.   For example, Ms. Campbell was nominated by her CTA peers for a prestigious integrity and client service performance award in 2012.

23.   On or about April 30, 2013, Ms. Campbell's then treating doctor for her MS condition reported in a letter on behalf of Ms. Campbell that "[m]ultiple Sclerosis is a chronic neurological disease with no cure. In general we anticipate continued

worsening of neurological status and thus prognosis for recovery is poor."

24. As a result of the loss of her insurance benefits, Ms. Campbell has incurred substantial medical expenses relating to her pregnancy and MS condition. To date, her outstanding medical expenses are approximately $25,000.

25. Due to outstanding medical expenses, there are now collection actions pending against Ms. Campbell.

26. Ms. Campbell has suffered substantial anxiety and humiliation as she cannot pay her bills and she has been unable to secure recommended medical treatment and medication for her MS.

27. On March 2, 2014, Ms Campbell's MS doctor reported in writing that "Ms. Campbell's lack of medical treatment and medication for her MS condition has resulted in the exacerbation of her MS symptoms."

28. Further, the MS doctor reported that "it is well known that a contributing factor to the deteriorating condition of MS is stress."

29. In the months following the reduction of Ms. Campbell's hours and the elimination of all of her benefits with CTA, CTA's

Helena office hired at least two new employees. One of these new hires included a Senior Engineer who was hired in April 2013 and the hiring process had started for this person in February 2013.

30.    In June, 2013 CTA's President announced that CTA was growing and creating new groups within the company to offer specialization to clients.

31.    In addition, CTA has recently opened new offices in Canada and is expanding its operations.

32.    Over the past few months CTA has posted openings in at least 9 of its offices for various positions.

33.    Ms. Campbell has made three written requests for information and documentation related to CTA's decision to eliminate all of her benefits.  CTA has elected not to provide the requested information to Ms. Campbell.

34.    Ms. Campbell has suffered substantial damages as a result of CTA's elimination of all of her CTA benefits.

## COUNT I

**VIOLATION OF ERISA RIGHTS UNDER 29 U.S.C.A. §1140, §510**

35.   Plaintiff realleges the above paragraphs as though fully set forth herein.

36.   At the very least, a motivating factor for CTA's reducing Ms. Campbell's role was for the purpose of interfering with Ms. Campbell's right to her benefits in violation of §510 of ERISA.

37.   As a direct and proximate result of CTA's violation of ERISA, Ms. Campbell has sustained substantial past and ongoing damages.

WHEREFORE, Ms. Campbell requests all equitable relief available in order to make her whole. Ms. Campbell requests damages including, but not limited to, the following:

1. Back pay;

2. Front pay;

3. Payment of all outstanding medical bills;

4. Reinstatement of all benefits;

5. Attorneys' fees and costs;

6. Damages resulting from Ms. Campbell's exacerbated MS condition resulting from a lack of CTA benefits; and

7. Any other such equitable relief as the Court deems necessary.

RESPECFULLY SUBMITTED this 26th day of March, 2014.

/s/ Todd Shea
Todd Shea
Attorney for Plaintiff